UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Jeffrey Lox, | ) | |
|            Plaintiff | ) | |
| | ) | |
| v. | ) | Case No. 10-1042 |
| | ) | |
| CDA Ltd., d/b/a Creditors Discount & Audit Co., | ) ) | |
|            Defendant | ) | |

### ORDER and OPINION

The parties have consented to have this case heard to judgment by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and the District Judge has referred the case to me. Now before the court are the parties' motions for summary judgment (#30 and #31). They are fully briefed, and I have carefully considered the arguments and evidence submitted. As discussed herein, plaintiff's motion is denied and defendant's motion is granted.

### JURISDICTION AND VENUE

This matter alleges violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §1692 *et seq*.. This Court accordingly has jurisdiction over the subject matter of the dispute pursuant to 18 U.S.C. §1331 because the dispute arises under the laws of the United States.

The Plaintiff is a resident of Glasford Illinois. Defendant is a corporation with a place of business in Peoria Illinois. The events giving rise to this litigation occurred in one or the other or both of those locations, both of which are within the Peoria Division of the Central District of Illinois. Venue is therefore proper in this district pursuant to 18 U.S.C. §1391(b).

### SUMMARY JUDGMENT GENERALLY

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order

to see whether there is a genuine need for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment should be entered if and only if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. See Jay v. Intermet Wagner Inc., 233 F.3d 1014, 1016 (7th Cir.2000); Cox v. Acme Health Serv., 55 F.3d 1304, 1308 (7th Cir. 1995).

In ruling on a summary judgment motion, the court may not weigh the evidence or resolve issues of fact; disputed facts must be left for resolution at trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). The court's role in deciding the motion is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. Waldridge v. American Hoechst Corp., 24 F.3d 918, 922 (7th Cir.1994). The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial.

The court is to examine all admissible facts, viewing the entirety of the record and accepting all facts and drawing all reasonable inferences in favor of the non-movant, Erdman v. City of Ft. Atkinson, 84 F.3d 960, 961 (7th Cir. 1996); Vukadinovich v. Bd. of Sch. Trustees, 978 F.2d 403, 408 (7th Cir. 1992), cert. denied, 510 U.S. 844 (1993); Lohorn v. Michal, 913 F.2d 327, 331 (7th Cir. 1990); DeValk Lincoln-Mercury, Inc. V. Ford Motor Co., 811 F.2d 326, 329 (7th Cir. 1987); Bartman v. Allis Chalmers Corp., 799 F.2d 311, 312 (7th Cir. 1986), cert. denied, 479 U.S. 1092 (1987), and construing any doubts against the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); Trotter v. Anderson, 417 F.2d 1191 (7th Cir. 1969); Haefling v. United Parcel Serv., Inc., 169 F.3d 494, 497 (7th Cir.1999).

## STATEMENT OF UNDISPUTED FACTS

The following statement of facts is taken from the parties' statements of undisputed facts, the responses and replies thereto, and the evidence submitted in support or in opposition.

Jeffrey Lox is an adult who lives in Glasford, Illinois, and he is a consumer as that word is defined by the FDCPA. He received medical treatment from Dr. Mark Baylor. At the time, he filled out and signed a "New Patient Information" form. (Plaintiff's Motion, Doc. #30 Exh. L). That form included the following language:

> All professional services rendered are charged to the patient. The patient is responsible for all fees, regardless of insurance coverage. It is customary to pay for services when rendered unless other arrangements have been made in advance with our office bookkeeper.

Lox incurred a debt to Dr. Baylor in the amount of $235.07. He did not pay that debt[1].

Dr. Baylor assigned the debt for collection to Creditors Discount & Audit Co. (referred to herein as "CDA"). It is not disputed that CDA is, a "debt collector" as that phrase is defined by the FDCPA. CDA's business includes collection of unpaid, outstanding account balances. As part of its daily business, CDA maintains account listings regarding the activity that takes place on each of its accounts. Notes about activities such as telephone calls, conversations, and written correspondence are noted contemporaneously in the account listing. If a debtor does not respond to CDA's letters, CDA seeks its client's permission to file suit. If permission is granted, CDA sends the account file to its attorney.

In late October of 2008 Lox received a one page letter at his home from CDA relating to the outstanding debt to Dr. Baylor. The substance of the letter (Amended Complaint, Doc. #5 Exh. A) was as follows:

---

[1]Plaintiff includes much information about why he did not pay the debt. This background information is not material to the pending motions.

```
                          Past Due Balance
                ***Detach Upper Portion And Return with Payment***
You have the right to pay this claim now.  To avoid further steps, respond within 48 hours.  Consider
our clients lawful alternatives closely.  Our Client may take legal steps against you and if the courts
award judgement, the court could allow court costs and attorney fees.
Interest may be accruing if authorized under a contract.

  DO NOT IGNORE THIS POSSIBLE LAST OPPORTUNITY TO PAY
  VOLUNTARILY

     Creditor Name              Account #        Interest      Balance
     Mark C Baylor Md           2181a            $0.00         $235.07
                                                               Total: $235.07
Contact: Ann
This is an attempt to collect a debt and any information obtained will be used for that purpose.
```

CDA did not communicate with Lox again until the spring of 2009. On May 13, 2009, CDA sent another letter to Lox at his home. This letter (Amended Complaint, Doc. #5, Exh. B) was identical to the first letter except for the date and some numeric coding.

CDA's account notes are difficult to decipher. Many abbreviations and codes are used. The entry from May 21, 2009 reads verbatim: "CLD HER NUMBR 7233; REC HAD NAME LM6109 P09 $25 MO". On that same date, CDA sent a third letter to Lox at his home. (Amended Complaint, Doc. #5, Exh. C). This letter did not appear to be a form letter, and its content was different from the first two. It read as follows:

> CREDITORS DISCOUNT & AUDIT CO.
>
> 5/21/2009   ANN
>                      2181a
>
> LOX, JEFFREY
> [ADDRESS REDACTED]
> GLASFORD IL 61533
>
> YOUR BALANCES DUE THE CLIENTS BELOW HAVE BEEN EXTENDED ON A PAYMENT PLAN OF $25.00 MONTHLY STARTING 5/29/09.
>
> WE HAVE ALLOWED THIS COURTESY TO YOU BECAUSE WE BELIEVE THAT YOU WISH TO COOPERATE AND TAKE CARE OF THIS RESPONSIBILITY.
>
> IF ANY PAYMENTS ARE MISSED WITHOUT OUR CONSENT, THE ENTIRE BALANCE WILL BECOME DUE.
>
> THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.
>
> INTEREST MAY BE ACCRUING IF AUTHORIZED UNDER A CONTRACT.
>
> CREDITORS DISCOUNT & AUDIT CO.
> [ADDRESS REDACTED]
> PEORIA IL 60602-1499
> PH.309-674-6109        OUTSIDE/309/  1-800-478-6458
>
> TO ASSURE PROPER CREDIT, ENCLOSE THIS NOTICE WITH YOUR PAYMENT.
>
> | CREDITOR NAME | ACCOUNT # | INTEREST | BALANCE |
> |---|---|---|---|
> | MARK C. BAYLOR MD | 2181A | $0.00 | $235.07 |

On June 18, 2009, another letter was sent by CDA in another attempt to collect the debt. This letter (Amended Complaint, Doc. #5, Exh. D) read in pertinent part as follows:

```
                    Past Due Balance
         ***Detach Upper Portion And Return with Payment***

                    FINAL NOTICE TO PAY
                    YOUR PAYMENT IS PAST DUE!
   OUR INFORMATION HAS DISCLOSED THAT YOU HAVE THE ABILITY TO PAY THIS
                    MAIL YOUR PAYMENT TODAY
                           DEBT!
                       TO THIS OFFICE.

Creditors wants accounts paid at once.    Account #      Interest       Balance
To avoid further steps, pay immediately to 2181a         $0.00          $285.07
   Mark C Baylor Md              Creditors Discount & Audit Co.
                                 [address redacted]
                                 (309) 674-9109  Outside 1-800-478-
                                                  Total: $235.07
Contact: Ann
6498
        Creditor Name              Account #       Interest       Balance
Interest may be accruing if authorized under a contract.
        Mark C Baylor Md            2181a          $0.00          $235.07

 This is an attempt to collect a debt and any information obtained will be used for that purpose.
                                                                  Total: $235.07
Contact: Ann    This communication is from a debt collection company.
This is an attempt to collect a debt and any information obtained will be used for that purpose.
            This communication is from a debt collection company.
```

On July 14, 2009, Defendant sent a fifth letter to Lox. This letter (Amended Complaint, Doc.#5, Exh. E), read in pertinent part as follows:

On July 27, 2009, CDA's account notes reflect a conversation with Jeffrey Lox. The notes read verbatim: "CLD SPK W/JEFF SD WIFE MADE OUT CHK TO PAY $25 LAST NIGHT HE WILL CONFIRM IT WAS SENT LM12." On that same date, CDA sent yet another letter to Lox (Amended Complaint, Doc. #5, Exh. F), which reads in pertinent part:

> <span style="background:black;color:white">              </span> Past due Balance
>
> ***Detach Upper Portion And Return with Payment***
>
> We have either contacted you, or attempted to do so, regarding the outstanding balance on your account. Your obligation has been transferred to this collection agency for immediate collection. Our previous attempts to resolve this matter have been unsuccessful.
>
> In today's economy, maintaining a positive credit profile is very important. Resolving this matter would help meet that end.
>
> We also accept payment via Western Union Quick Collect and Direct Check Service. Please call for instructions.
>
> Interest may be accruing if authorized under a contract.
>
> This is an attempt to collect a debt. Any information obtained will be used for that purpose.
>
> To assure proper credit, enclose this notice with your remittance.
>
> | **Creditor Name** | **Account #** | **Interest** | **Balance** |
> |---|---|---|---|
> | Mark C Baylor Md | 2181a | $0.00 | $235.07 |
> |  |  | Total: | $235.07 |

Finally, an undated form letter ( (Amended Complaint, Doc. #5, Exh. G) was sent to Lox at his home. Under CDA's logo with address and telephone and fax numbers, this letter read in pertinent part:

> You have failed to respond to our communications and/or have made no attempt to pay this seriously delinquent bill.
>
> We may consider our other options in this matter. Please pay this bill today or contact our office to forestall any further collection activity. We report to the three major credit reporting agencies.
>
> We have enclosed a return envelope for your payment. Please include your account number on your check or money order. We also accept payment via Western Union Quick Collect and a Direct Check service. Please call for instructions.
>
> Interest may be accruing if authorized under a contract.
>
> This is an attempt to collect a debt. Any information obtained will be used for that purpose.
> This communication is from a debt collection company.
>
> To assure proper credit, enclose this notice with your remittance.
>
> | **Creditor Name** | **Account #** | **Interest** | **Balance** |
> |---|---|---|---|
> | Mark C Baylor Md | 2181a | $0.00 | $235.07 |
> |  |  | **Total:** | **$235.07** |

On September 2, CDA's account notes reflect a telephone conversation between a CDA representative and Jeffrey Lox, in which Lox stated that he was in litigation with a third party about this bill. The conversation included information about the attorney who represented Lox. There were no further pre-litigation communications between CDA and Lox.

The lawsuit now pending before this Court was filed on February 19, 2010. Lox takes issue with four statements contained in the seven letters reproduced above, alleging that each one violates the FDCPA, as follows:

> A. The statement "Our client may take legal steps against you, and if the courts award judgement, the court could allow court costs and attorneys' fees," contained in the first and second letters, is alleged to be a threat to take action that is not legally permitted in violation of 1692e(5), because there was no legal basis for any court to award attorney's fees should litigation be filed..
>
> B. The statements "To avoid further steps, respond within 48 hours" and "FINAL NOTICE TO PAY!" contained in the first and second letters are alleged to create a false sense of urgency, in violation of 15 U.S.C. § 1692e.
>
> C. "FINAL NOTICE TO PAY!" contained in the first and second letters is alleged to be misleading and objectively false, because this was not the final notice, in violation of 1692e.
>
> D. The third and fourth letters falsely suggest that Lox had agreed to a payment plan of $25 per month, in violation of 1692e.

### FDCPA

The FDCPA broadly prohibits "false, deceptive, or misleading representation" in connection with debt collection. 15 U.S.C. § 1692. Sixteen separate violations are enumerated in 15 U.S.C. 1692e(1)-(16), although that list is not exhaustive: the same section expressly states that the subsections do not limit the applicability of the preliminary language. Id.

Whether a representation violates the statute is judged from the view of an "unsophisticated consumer. In Gammon v. GC Servs. Ltd. P'ship, 27 F.3d 1254, 1257 (7th Cir. 1994), the Seventh Circuit rejected the terminology "least sophisticated consumer standard" that had been used by many courts, noting that such a standard would of necessity read out any rudimentary element of reasonableness. Instead, the Seventh Circuit believed that the phrase "unsophisticated consumer" more accurately described the uninformed, naive or trusting consumer, but it imports the objective element of reasonableness into that description. It assumes that the consumer possesses "rudimentary knowledge" about finances and is capable of making "basic logical deductions and inferences." Durkin v. Equifax Check Servs., Inc., 406 F.3d 410, 414 (7th Cir. 2005). In short, the unsophisticated consumer is not a "dimwit." Wahl v. Midland Credit Mgmt., Inc., 556 F.3d 643, 645 (7th Cir.2009).

This standard protects debt collectors from liability for "unrealistic or peculiar interpretations" of collection letters while remaining true to the statute's goal. Hence the standard against which a plaintiff is measured is "low, close to the bottom of the sophistication meter." Avila v. Rubin, 84 F.3d 222, 226 (7th Cir. 1996).

It is not enough for a plaintiff to show that a statement is false; the statement must also mislead or deceive the unsophisticated consumer. Wahl v. Midland Credit Mgt., Inc., 556 F.3d 643 (7th Cir. 2009); Ruth v. Triumph Partnerships, 577 F.3d 790, 800 (7th Cir.2009); Muha v. Encore Receivable Management, Inc., 558 F.3d 623, 627 (7th Cir.2009) ("If a statement would not mislead the unsophisticated consumer, it does not violate the FDCPA even if it is false in some technical sense."). See also Evory v. RJM Acquisitions Funding LLC, 505 F.3d 769, 774 (7th Cir.2007); Turner v. J.V.D.B. & Assoc., 330 F.3d at 991, 995 (7th Cir. 2003). The burden of proving that the statement would mislead or deceive is the Plaintiff's burden. Wahl, 445 F.3d at 643; Ruth, 577 F.3d at 800.

In Ruth, the Court considered the question whether a plaintiff must produce extrinsic evidence in order to meet that burden. The Court held that extrinsic evidence is required in cases where the statements were not plainly misleading or deceptive but might possibly mislead or deceive an unsophisticated consumer. There are two other possible types of statements, however: statements that are plainly *not* misleading or deceptive on their face and statements that *are* plainly misleading or deceptive on their face. When a complaint under FDCPA is based on statements in one of the latter two categories, the court can rule without extrinsic evidence. Id. at 801. See also, Taylor v. Cavalry Inv. LLC, 365 F.3d 572, 575 (7th Cir. 2004)("If it is apparent from a reading of the letter that not even a significant fraction of the population would be misled by it," plaintiff cannot create a question of fact simply by averring that he was confused by it.)

## DISCUSSION

### *"Our client may take legal steps against you, and if the courts award judgement, the court could allow court costs and attorneys' fees"*

Lox's first contention is that this statement is false and deceptive because he had no obligation to pay attorney's fees. He asserts that this claim is false because no statute or contract authorizes recovery of attorney fees for CDA's client, Dr. Baylor. It therefore violates the statutory section that prohibits such threats.

Lox relies on a number of cases, none of which are binding on this Court, for the proposition that the pursuit of unauthorized attorney's fees in a collection suit violates the FDCPA. While that is a proper statement of their holdings, Lox jumps from that holding to the conclusion that the statement included in CDA's letter is governed by those holdings. It is not, the statement simply cannot be reasonably interpreted as saying that CDA was seeking attorney's fees in its letter.

This is demonstrated by comparing the statement to the ones in the cases cited by Lox. In McCollough v. Johnson, Rodenburg & Lauinger, LLC, - F.3d -, No. 09-35767, 2011 WL 746892,

at *7, Mar. 4, 2011 (9th Cir.), a creditor assigned a delinquent debt to a debt collector to pursue a collection case. In the complaint, the defendant had included a demand a specified amount for attorneys' fees. In the subsequent FDCPA action, the court found that there was no evidence of a legal basis for collecting attorney's fees, so the demand was in violation of the FDCPA.

In <u>Strange v. Wexler</u>, 796 F. Supp. 1117, 1118 (N.D.Ill.1992), the debt collector, who was also an attorney, sent a letter threatening to sue on a delinquent debt. In a second letter, he threatened to sue for writing a bad check, even though the debtor had written no checks. He then filed suit and prayed for the amount of the debt plus attorney's fees and costs of $300. Under Illinois law, attorney's fees are awarded in suits to collect on a dishonored check, but not on a simple debt. The court found that the demand for attorneys fees violated the FDCPA.

In <u>Newman v. Checkrite California Inc.</u>, 912 F. Supp. 1354 (E.D.Cal.1995), an attorney sued in state court for bad debts, including in each claim a prayer for attorney's fees. None of the state claims allowed for recovery of attorney's fees, and in a subsequent action under the FDCPA, the court found that this violated the Act.

The statements discussed in these cases are unlike the one in the case now before this Court. The letter from CDA made no specific demand for attorney's fees and did not specify an amount of attorney's fees. The statement is not and cannot reasonably be interpreted as a threat that CDA will seek payment of attorney's fees. Use of the words "may," "could," and "if," along with the absence of any specific amount of fees added to the amount of the debt, render the statement nearly meaningless. It is almost impossible to characterize this statement as true or false, given the multiple hypothetical words contained in this single sentence. This point is highlighted in <u>Taylor</u>, where the Seventh Circuit found "downright frivolous" the claim that a letter was false because it said the creditor "might" add interest. 365 F.3d at 575.

Moreover, even if it were characterized as false, the most unsophisticated consumer could

not reasonably be misled or deceived by the statement into thinking that he must presently pay some unspecified amount of attorney's fees in order to satisfy the debt. The letter clearly states the amount of the debt, and no additional amount for attorney's fees is added to that amount or otherwise stated in the letter.

No extrinsic evidence is needed to draw the conclusion that this statement was not in violation of FDCPA; it plainly is not. As to that statement, the Plaintiff's motion for summary judgment is denied, and the Defendant's motion for summary judgment is granted.

### *"To avoid further steps, respond within 48 hours"* and *Final Notice to Pay*

According to Lox, these two statements, appearing in sequential letters, violate the FDCPA by creating a false sense of urgency. The FDCPA does not explicitly proscribe creating a false sense of urgency, and the Seventh Circuit has not specifically addressed this point. Many courts, however, deem such communications to be one type of "false representation or deceptive means" that is prohibited by the FDCPA. 15 U.S.C. 1692e(10). See Nelson McGourty v. L&P Financial Adjusters Inc., - F. Supp. -, 2010 WL 3190711 *15, Aug. 12, 2010 (N.D.Ill.2010) (collecting cases).

In Schweizer v. Trans Union Corp., 136 F.3d 233 (2d Cir. 1998), the plaintiff received a collection notice in an envelope that simulated a telegram; the letter contained the word "Priority-Gram" in large print at the top, so the letter too resembled a telegram. She alleged that this created a false sense of urgency and misrepresented the importance, cost, purpose and urgency of the letter. Other than the appearance and the similarity of defendant's name to Western Union, the complaint contained no criticism of the contents of the letter. The Court found that the letter and envelope did not simulate a telegram; they had been sent, after all, via regular postal service. The Court noted that most people today have never received a telegram, so any urgency an actual telegram might have once created no longer existed. From these findings, the Court concluded that no reasonable juror could find that the letter and envelope created a false sense of urgency. Id. at 238.

In <u>Taylor</u>, the Seventh Circuit considered the statements "Act now to satisfy your debt"and "we urge you to take action now" and 'call our office today" that were contained in an initial letter to the debtor. The question was whether the statements "overshadowed" the statutory right to a 30 day period within which a debtor can seek verification of the debt. The <u>Taylor</u> Court characterized the statement as "in the nature of puffing, in the sense of rhetoric designed to created a mood rather than to convey concrete information or misinformation" and compared it to phrases such as "Buy now!", "Best Deal Ever!", ands "We will not be undersold!". 365 F.3d at 575. The Court rejected the claim that such puffery violated the Act, stating, "[I]t is perfectly obvious to even the dimmest debtor that the debt collector would *very* much like him to pay the amount demanded straight off, sparing the debt collector any further expense." <u>Id.</u> at 575 [emphasis in original].

Although the context in <u>Taylor</u> was somewhat different than what is now before this Court, it is nonetheless instructive. The statements in question must be examined to determine whether they convey specific, concrete information (or misinformation) or whether they are better characterized as rhetoric designed to create a mood, such as the effort in <u>Schweizer</u>, <u>supra</u>. I find that the statements taken together might possibly mislead an unsophisticated consumer. A specific time frame - 48 hours - is stated. A specific action - respond - is required, and the word "final" is used, a word which has a commonly understood meaning. I cannot, however, conclude that these statement taken together so clearly create a false sense of urgency that most unsophisticated consumers would be misled or confused by them. These statements come very close to "puffery." Moreover, the "further steps" mentioned in the one statement are not identified; no concrete action by CDA is threatened.

In other words, I conclude that these statements did not plainly create a false sense of urgency, but they might possibly have misled an unsophisticated consumer into believing that there was urgency. Hence, the burden rests on Lox to produce extrinsic evidence of how the statements

13

would mislead or deceive the reasonable, unsophisticated consumer. Unfortunately for Lox, however, no such evidence - beyond his own self-serving statements - has been produced. As discussed above, Lox's own beliefs about how these statements misled him as to the urgent nature of the letters are not evidence of a statutory violation. Lox has therefore failed to meet his own burden of proof on this issue.

### *The statement "FINAL NOTICE TO PAY!"is false, because it was not the final notice.*

Lox next asserts that he was deceived into thinking that these letters were "final" when they demonstrably, objectively were not, because other letters followed. This, he asserts, is violative of the act because a false statement was used to collect a debt.

The fact that the statement was false is not enough. A plaintiff must also show that he was somehow misled or deceived by that statement. There is no evidence in the record to suggest that Lox did anything in reliance on the word "final" or on the concept that some other action might follow that letter if he did not pay.

Moreover, it has been held that use of the word "final" did not on its face violate the Act, even when there was "compelling evidence" that settlement offers contained in the letters were not "final offers." Evory v. RJM Acquisition Funding LLC, 505 F.3d 769, 775 (7th Cir. 2007). Whether the statement was understood as deceptive by unsophisticated consumers was dependent on extrinsic evidence. Id. Here, as in Evory, there is no extrinsic evidence. Plaintiff has failed to meet his burden on this issue.

### *The third and fourth letters falsely suggest that Lox had agreed to a payment plan of $25 per month.*

The third letter reads in pertinent part:

Your balances due the clients below have been extended on a payment plan of $25.00 monthly starting 5/29/09. We have allowed this courtesy to you because we believe that you wish to cooperate and take care of this responsibility. If any payments are missed without our consent, the entire balance will become due.

This letter was followed up about a month later with the fourth letter that stated, "Your payment is past due! Mail your payment today to this Office." The latter letter made no reference to $25.00; the only amount shown is the total balance of the debt.

According to Lox, these two letters combined created the false impression that he had actually agreed to make monthly payments of $25, when he had never made such an agreement. There are two problems with this argument. First, the third letter does not say that Lox's agreement was sought, obtained, or necessary. It simply says that Lox can take care of his responsibility by paying $25 per month. The fourth letter does not mention the amount $25 or a payment plan at all.

The statements contained in these letters are not plainly false and deceptive. In my opinion, they are neither. However, as the Seventh Circuit has noted, a judge might be wrong about how an unsophisticated consumer would judge these letters, and I conclude that they might possibly be viewed as deceptive or misleading by an unsophisticated consumer.

That conclusion leads inevitably to the second flaw in Lox's argument. He has submitted no evidence other than his own beliefs that these letters would have misled a reasonable unsophisticated consumer. Once again, that failure is fatal to his claim.

**CONCLUSION**

The Plaintiff's motion for summary judgment is DENIED. The Defendant's motion for summary judgment is GRANTED. The Clerk is directed to enter judgment in favor of Defendant and against Plaintiff. This case is terminated.

ENTERED ON July 1, 2011

s/ John A. Gorman

JOHN A. GORMAN
UNITED STATES MAGISTRATE JUDGE